
OFFICE COPY

Kenneth A. Plevan (KP 2551)
John L. Gardiner (JG 8715)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Nicholas A. Gravante, Jr. (NG-4411)
Steven I. Froot (SF-7662)
Boies, Schiller & Flexner LLP
570 Lexington Avenue
New York, NY 10022

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| C. V. STARR & CO., INC., C.V. STARR & CO., and STARR TECHNICAL RISKS AGENCY, INC., | |
| Plaintiffs, | 06 Civ. 2157 (HB)(KNF) |
| v. | ECF Case |
| AMERICAN INTERNATIONAL GROUP, INC. and STARR EXCESS LIABILITY INSURANCE COMPANY, LTD., | **SECOND AMENDED AND SUPPLEMENTAL COMPLAINT** |
| Defendants. | |

---

Plaintiffs C. V. Starr & Co., Inc. ("C. V. Starr") and its subsidiaries C.V. Starr & Co. ("C.V. Starr California") and Starr Technical Risks Agency, Inc. ("Starr Tech"), by their undersigned counsel, for their Second Amended and Supplemental Complaint against defendants American International Group, Inc. ("AIG") and Starr Excess Liability Insurance Company, Ltd. ("Starr Excess Ltd."), allege upon personal knowledge with

respect to their own acts, and upon information and belief with respect to all other matters, as follows:

## NATURE OF ACTION

1.      This lawsuit arises out of defendants' improper and infringing use of the service mark "STARR EXCESS" in connection with insurance services, their attempts to appropriate for themselves "Starr" service mark rights that exclusively belong to plaintiff C. V. Starr, their wrongful ownership and use of "starr" domain names, including cvstarr.com and starrexcess.com, and AIG's wrongful exercise of control over the C.V. Starr California website accessible at www.cvstarr.com.

### Repudiation of Starr Excess License Agreement

2.      Plaintiff C. V. Starr was incorporated in 1950. For more than 50 years, through its wholly owned subsidiaries (including plaintiff C.V. Starr California), C. V. Starr has offered a variety of insurance and insurance-related services under service marks consisting of or incorporating the term "Starr."

3.      Directly or through subsidiaries, C. V. Starr is the owner of several federal and common law service marks that use or otherwise incorporate the term STARR for use in connection with insurance and insurance-related services, including the marks C.V. STARR & CO., STARR TECH, STARR TECHNICAL RISKS AGENCY, and STARR ASSOCIATES, INC.

4.      As of June 29, 1993, C. V. Starr granted Starr Excess Ltd. and its then-parent a non-exclusive, non-transferable license to use the STARR mark in connection with the provision of insurance products (the "License Agreement"). In said License Agreement, Starr Excess Ltd. expressly acknowledged the superior rights of C. V. Starr in

2

the STARR corporate name, trademarks, service marks, tradename designs, logos, brand marks, and brand names throughout the world.

5. As a consequence of the allegations of AIG's Answer, Affirmative Defenses and Counterclaims herein, dated April 26, 2006, defendants disavowed the June 1993 License Agreement, alleging that it was unenforceable and that the sole purpose of said License Agreement was to protect the interests of AIG as the alleged beneficial owner of the "STARR" mark for insurance services. Said conduct constitutes a repudiation of a material term of the License Agreement, thereby terminating the license rights to the STARR EXCESS mark previously exercised by defendant Starr Excess Ltd.

6. Notwithstanding said repudiation, defendant Starr Excess Ltd. has wrongfully continued to use the STARR EXCESS mark in connection with the provision of insurance and insurance-related services.

7. Defendants' continued use of, and AIG's continued maintenance of, United States federal registrations for STARR EXCESS marks constitute service mark infringement, false designation of origin, and unfair competition, under the Lanham Trademark Act of 1946, as amended, Title 15, United States Code, §1501, et seq. (the "Lanham Act").

8. AIG's conduct constitutes unfair competition under the common law of the State of New York, as well as service mark infringement under New York General Business Law § 360-k and Cal. Bus. & Prop. Code § 14320 and service mark dilution under New York General Business Law § 360-l and Cal. Bus. & Prop. Code § 14330.

3

9. Defendants' repudiation of the License Agreement and material provisions therein entitles plaintiffs to a declaration under 28 U.S.C. § 2201 that defendants' rights under the License Agreement have terminated.

### "Starr" Domain Names

10. AIG's wrongful conduct includes the ownership and use of certain "starr" domain names, including cvstarr.com which had been transferred to AIG solely for administrative convenience in connection with a proposed upgrade of the website.

11. In late 2005 and early 2006, AIG refused repeated requests to transfer the cvstarr.com domain name to plaintiffs. Rather, AIG opted to exercise ownership and control over said domain name, as well as over the C.V. Starr California website accessible at www.cvstarr.com.

12. AIG's conduct with respect to the cvstarr.com domain name and the C.V. Starr California website constitutes, among other violations of plaintiff's rights, trademark infringement, cybersquatting in violation of Section 43(d) of the Lanham Act, and conversion under the common law of the State of California.

## JURISDICTION AND VENUE

13. The Court has jurisdiction over the federal claims under 15 U.S.C. § 1121 (original jurisdiction for Lanham Act claims), 28 U.S.C. §§ 1331 (federal question jurisdiction), and 1338(a) (original jurisdiction for Lanham Act claims). Jurisdiction over the state law claims is based on 28 U.S.C. §§ 1367 (supplemental jurisdiction) and 1338(b) (original jurisdiction for unfair competition claims).

14. Jurisdiction over the defendants is proper because defendants' principal place of business is in New York and because defendants have conducted business in New York using the trademarks at issue in this lawsuit.

15. Venue is proper in this District under 28 U.S.C. § 1391(b) (venue based on events) and § 1391(c) (venue based on jurisdiction), because a substantial part of the events giving rise to this action occurred in this District and defendants are subject to personal jurisdiction in this District.

## THE PARTIES

16. Plaintiff C. V. Starr is a Delaware corporation with its principal place of business located at 399 Park Avenue, New York, New York.

17. Plaintiff C.V. Starr California is a California corporation with its home office located at 101 Second Street, San Francisco, California 94105. C. V. Starr California is a wholly owned subsidiary of C. V. Starr and is a managing general agency in the business of underwriting excess insurance in specialty classes, with approximately 50% of its premiums written in California.

18. Plaintiff Starr Tech is a New York company with its home office currently located at 90 Park Avenue, New York, New York 10016. Starr Tech is a wholly owned subsidiary of C. V. Starr and is a managing general agency in the business of

5

providing insurance, fronting claims and loss control services to the highly specialized energy-related and technical industries.

19. Defendant AIG is a Delaware corporation with its principal place of business located at 70 Pine Street, New York, New York 10270.

20. Defendant Starr Excess is a Delaware corporation with a principal place of business located at 70 Pine Street, New York, New York 10270. Starr Excess is a wholly owned subsidiary of AIG, and the successor in interest to Starr Excess Liability Insurance Company, Ltd., one of the licensees under the License Agreement.

### C. V. Starr and its STARR Marks

21. For over five decades, plaintiff C. V. Starr has offered, through its subsidiaries, a variety of insurance and insurance-related services under names and service marks consisting of or incorporating the term STARR (the "STARR Marks"). Among the services offered by C. V. Starr, through its subsidiaries, under the distinctive STARR Marks are residential and commercial property and casualty insurance, underwriting services, and agency/brokerage services in connection with excess and surplus umbrella insurance.

22. Since 1953, C. V. Starr has used the C.V. STARR & CO. name and mark in commerce in connection with insurance underwriting services. In addition, C. V. Starr, through its wholly owned subsidiary C.V. Starr California, is the owner of the federally registered mark C.V. STARR & CO. for insurance underwriting services (U.S. Reg. No. 2,877,409). C. V. Starr also owns, either directly or through C.V. Starr California, federal registrations for the following STARR Marks for use in connection with insurance underwriting services:

| Mark | U.S. Reg. # | First Use | Registered | Services |
|---|---|---|---|---|
| **STARR TECH and Design** | 1,570,227 | 12/6/1967 | 3/13/1989 | Property and casualty insurance underwriting and agency services |
| **STARR TECHNICAL RISKS AGENCY, INC. and Design** | 1,601,345 | 12/6/1967 | 3/12/1990 | Identifying property and casualty insurance underwriting and agency services |
| **C. V. STARR & CO. and Design** | 2,926,969 | 11/2/2004 | 2/15/2005 | Insurance underwriting services, namely commercial property and casualty insurance |

23. C. V. Starr also holds common law service mark rights in several STARR Marks, including the mark STARR ASSOCIATES, INC., under which C. V. Starr has, for more than thirty years, offered excess and surplus insurance brokerage services.

24. Said STARR Marks are distinctive as a consequence of inherent distinctiveness as well as acquired good will.

25. Through advertising, promotion, and extensive sales of insurance services, the STARR Marks have become associated with C. V. Starr and its subsidiaries, and the STARR Marks represent enormous good will that belongs exclusively to C. V. Starr and its subsidiaries.

### Defendants' Use of the STARR EXCESS Marks

26. Defendant AIG, through its wholly-owned subsidiaries and related entities, is also in the business of providing insurance and insurance-related services.

27. In or about 1993, AIG sought to offer insurance underwriting services under certain service marks consisting of or incorporating the service mark STARR EXCESS (the "STARR EXCESS Marks"). At the time, C. V. Starr and several of its

7

affiliates maintained ongoing business relationships with AIG and its subsidiaries, pursuant to which C. V. Starr's subsidiaries served as managing general agents for certain AIG subsidiaries.

28.     On June 29, 1993, C. V. Starr entered into the License Agreement, granting AIG's now wholly-owned subsidiary Starr Excess Ltd., a license to use the STARR mark in connection with the latter's corporate name and the sale and promotion of insurance products.

29.     C. V. Starr was, at all relevant times, aware of the nature of Starr Excess Ltd.'s commercial use of the STARR EXCESS Marks, and that the services offered by it under the marks satisfied appropriate quality standards.

30.     As part of the License Agreement, Starr Excess Ltd. expressly acknowledged C. V. Starr's superior rights to "certain trademarks, service marks, trade names, designs, logos, brand marks and/or brand names which include the name 'Starr' and registrations and applications therefore."

31.     At no time did C. V. Starr assign to, or otherwise permit, defendants to acquire for themselves service mark ownership rights in the STARR EXCESS Marks or any other service mark or corporate name consisting of or incorporating the term STARR.

### Defendants' Improper Attempts to Obtain Rights in the STARR EXCESS Marks

32.     Starting in mid-2004, AIG improperly filed and ultimately obtained federal service mark registrations for the following marks:

| Mark | U.S. Reg. # | First Use | Registered (Applied) | Services |
|---|---|---|---|---|
| STARR EXCESS | 2,985,541 | 6/30/1993 | 8/16/2005 (7/1/2004) | Insurance underwriting services, namely, property and casualty |

8

| Mark | U.S. Reg. # | First Use | Registered (Applied) | Services |
|---|---|---|---|---|
| | | | | insurance, directors' and officers' liability insurance, errors and omissions liability, fiduciary liability, employee practices liability, and professional liability insurance |
| STARR EXCESS INTERNATIONAL | 3,027,800 | 6/30/1993 | 12/13/2005 (8/31/2004) | Insurance underwriting services, namely, property and casualty insurance, directors' and officers' liability, errors and omissions liability, fiduciary liability, employee practices liability, and professional liability insurance |
| STARR EXCESS INTERNATIONAL and Design | 3,027,800 | 6/30/1993 | 12/13/2005 (8/31/2004) | Insurance underwriting services, namely, property and casualty insurance, directors' and officers' liability, errors and omissions liability, fiduciary liability, employee practices liability, and professional liability insurance |
| STARR EXCESS LIABILITY INSURANCE COMPANY, LTD. | 2,985,542 | 6/30/1993 | 8/16/2005 (7/1/2004) | Insurance underwriting services, namely, property and casualty insurance, directors' and officers' liability insurance, errors and omissions liability, fiduciary liability, employee practices liability, and professional liability insurance |

9

| Mark | U.S. Reg. # | First Use | Registered (Applied) | Services |
|---|---|---|---|---|
| STARR EXCESS INTERNATIONAL | 3,027,449 | 1/28/1998 | 12/13/2005 (7/1/2004) | Insurance underwriting services, namely, property and casualty insurance, directors' and officers' liability insurance, errors and omissions liability, fiduciary liability, employee practices liability, and professional liability insurance |
| STARR EXCESS LIABILITY INSURANCE COMPANY, LTD. | 3,027,448 | 1/28/1998 | 12/13/2005 (7/1/2004) | Insurance underwriting services, namely, property and casualty insurance, directors' and officers' liability insurance, errors and omissions liability, fiduciary liability, employee practices liability, and professional liability insurance |
| STARR EXCESS SERVICES | 2,985,543 | 9/1/1999 | 8/16/2005 (7/6/2004) | Insurance underwriting services, namely, property and casualty insurance, directors' and officers' liability insurance, errors and omissions liability, fiduciary liability, employee practices liability, and professional liability insurance |

33.   On January 13, 2006, AIG filed an application to register the mark STARR EXCESS BOARD PROTECTOR, U.S. Ser. No. 78/791,312, and on February 27, 2006, AIG filed an application to register STARR EXCESS EXTRA, U.S. Ser. No. 78/824,324.

10

34. AIG has also registered several domain names that incorporate the term "STARR" (the "Starr Domain Names"), including, without limitation, starrexcess.com, starrtechnical.com, starr-tech.biz, cvstarr.com, and cvstarr.us.

### Repudiation of the License Agreement

35. In late January 2006 and early February 2006, AIG advised several of C. V. Starr's subsidiaries serving as managing general agents for AIG subsidiaries that the Starr subsidiaries were, or soon would be, unilaterally terminated as managing general agents, or that their agency agreements would not be renewed. To the extent that defendants may have had an implied license to use any STARR Marks, AIG's actions in furtherance of its efforts to terminate its business relationships with C. V. Starr and C. V. Starr's managing general agencies, and AIG's actions aimed at attempting to insulate itself from competition from the C. V. Starr agencies, has terminated any such implied license.

36. Following commencement of this lawsuit, defendants repudiated the License Agreement by asserting in its Answer, Affirmative Defenses and Counterclaims that said Agreement was invalid and unenforceable and that the sole purpose of the Agreement was to protect the interests of AIG as the alleged beneficial owner of the STARR mark for insurance services.

37. AIG materially breached the License Agreement, and its provision that the grant was "non-transferable," by filing for and obtaining the federal STARR EXCESS trademark registrations referred to herein.

38. Having obtained a license from C. V. Starr to use STARR marks, and having acknowledged C. V. Starr's superior rights in said marks, defendant Starr Excess Ltd., and through it AIG, are barred by the doctrine of licensee estoppel from asserting any ownership rights in any STARR marks.

11

39. AIG's disavowal of the License Agreement, and its attempts to procure for itself C. V. Starr's rights to the STARR Marks, constitutes a repudiation of the License Agreement, thereby extinguishing Starr Excess Ltd.'s rights under said License Agreement and entitling C. V. Starr to a declaration that the License Agreement is no longer in effect, and that whatever rights defendants may have had to use any STARR marks under that License Agreement have terminated.

### AIG'S Wrongful Retention of the cvstarr.com Domain Name

40. During the time in which C. V. Starr's subsidiaries were serving as managing general agents for AIG subsidiaries, C.V. Starr California solicited the assistance of AIG's e-Business group to help C.V. Starr California develop an improved website for the business of C.V. Starr California. For administrative convenience in aid of this effort, C.V. Starr California transferred the domain name registration for cvstarr.com to AIG. Although efforts to improve the website were later abandoned, AIG has refused to transfer the domain name and control of the website back to plaintiffs, despite repeated requests.

41. As a consequence of AIG's ownership of the cvstarr.com domain name registration, it exercises control over the content of the C.V. Starr California website accessible at www.cvstarr.com.

### IRREPARABLE HARM

42. Defendants' continued use of the STARR EXCESS Marks, registration of the "starr" Domain Names, wrongful retention of the cvstarr.com domain name, and its exercise of control over the C.V. Starr California website are causing, and if not enjoined will continue to cause, serious and irreparable harm to plaintiffs, for which plaintiffs have no adequate remedy at law.

12

## FIRST CLAIM FOR RELIEF

### SERVICE MARK INFRINGEMENT
### UNDER SECTION 32(1) OF THE LANHAM ACT

43. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 42 of the Amended Complaint as if fully set forth herein.

44. Defendants' applications for, and registration, use and threatened continued use of, the STARR EXCESS Marks and the "starr" Domain Names, and exercise of control over the C. V. Starr California website, all in connection with its insurance products and services, infringe the exclusive rights of C.V. Starr and its subsidiaries in their federally registered STARR Marks, in violation of Section 32(l) of the Lanham Act, 15 U.S.C. § 1114(l), in that said conduct is likely to cause consumer confusion and to cause the relevant public to mistakenly believe that there is a connection, association, or affiliation between plaintiffs and defendants.

45. Defendants' infringing acts have been with full knowledge of plaintiffs' rights in the STARR Marks and the "starr" Domain Names.

## SECOND CLAIM FOR RELIEF

### UNFAIR COMPETITION AND
### FALSE DESIGNATION OF ORIGIN
### UNDER SECTION 43(a) OF THE LANHAM ACT

46. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 45 of the Amended Complaint as if fully set forth herein.

47. Defendants' conduct complained of herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48. Defendants' applications for, and registration, use, and threatened continued use of the STARR EXCESS Marks and the "starr" Domain Names, all in

13

connection with its insurance products and services, and retention of, among others, the cvstarr.com domain name, infringes plaintiffs' exclusive rights in their federally registered STARR Marks and constitutes a false designation of origin in commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### THIRD CLAIM FOR RELIEF

### CANCELLATION OF SERVICE MARK REGISTRATIONS UNDER SECTION 37 OF THE LANHAM ACT

49. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 48 of the Amended Complaint as if fully set forth herein.

50. Defendants have obtained seven federal registrations for marks containing the term STARR EXCESS in connection with insurance products and services, and have applied for more, all in material violation of the License Agreement.

51. Defendants' applications for, and registration, use, and threatened continued use of, the STARR EXCESS Marks in connection with insurance products and services violates plaintiffs' exclusive rights under Sections 32(1), 43(a), and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c), in that said usage and registrations infringe plaintiffs' federally registered STARR Marks.

52. AIG's registration of the STARR EXCESS marks exceeded its contractual authority under the License Agreement.

### FOURTH CLAIM FOR RELIEF

### COMMON LAW UNFAIR COMPETITION

53. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 52 of the Amended Complaint as if fully set forth herein.

14

54. The right of plaintiffs to own and use the STARR Marks is a valuable property right.

55. Defendants' applications for, and registration, use, and threatened continued use of the STARR EXCESS Marks and the Starr Domain Names, all in connection with insurance products and services, with knowledge of plaintiffs' rights in the STARR Marks and the importance and value of the right of plaintiffs to use the STARR Marks, has deprived plaintiffs of the right to own and use their valuable property, and constitutes an intentional misappropriation of plaintiffs' STARR Marks, as well as unfair competition, under the common law of the State of New York and the State of California.

## FIFTH CLAIM FOR RELIEF

### SERVICE MARK INFRINGEMENT UNDER STATE LAW

56. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 55 of the Amended Complaint as if fully set forth herein.

57. Defendants' wrongful acts complained of herein are likely to continue to cause confusion with plaintiffs' STARR Marks, and thereby constitute service mark infringement under N.Y. Gen. Bus. L. § 360-k and Cal. Bus. & Prof. Code § 14320.

## SIXTH CLAIM FOR RELIEF

### SERVICE MARK DILUTION UNDER STATE LAW

58. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 57 of the Amended Complaint as if fully set forth herein.

59. Defendants' wrongful acts complained of herein have diluted and are likely to continue to dilute the distinctive nature of plaintiffs' STARR Marks, and therefore violate N.Y. Gen. Bus. L. § 360-l and Cal. Bus. & Prof. Code § 14330.

## SEVENTH CLAIM FOR RELIEF

## CYBERSQUATTING UNDER
## SECTION 43(d) OF THE LANHAM ACT

60. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 59 of the Amended Complaint as if fully set forth herein.

61. Defendant AIG's continued use of the cvstarr.com domain name constitutes a bad faith intent to profit from said domain name and the C.V. Starr California website and to injure plaintiffs.

62. AIG's conduct complained of herein constitutes a violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

63. Plaintiffs have suffered and will continue to suffer irreparable harm as a result of such violations of law for which there is no adequate remedy at law.

## EIGHTH CLAIM FOR RELIEF

## COMMON LAW CONVERSION

64. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 63 of the Amended Complaint as if fully set forth herein.

65. The domain name cvstarr.com and the website accessible at www.cvstarr.com are valuable property rights of plaintiff C.V. Starr California.

66. Defendant AIG's retention of the cvstarr.com domain name, and its exercise of control over the associated website, was and is being done without plaintiffs' permission or authorization, and indeed contrary to plaintiffs' express protests.

67. AIG's conduct complained of herein constitutes conversion under the common law of the State of California.

16

68. C.V. Starr California has suffered and will continue to suffer irreparable harm as a result of such violations of law for which there is no adequate remedy at law.

## NINTH CLAIM FOR RELIEF

### DECLARATORY RELIEF

69. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 68 of the Amended Complaint as if fully set forth herein.

70. Defendants' disavowal of the License Agreement and attempts to procure for themselves C. V. Starr's rights in relation to the STARR Marks constitutes a repudiation of the License Agreement, and an actual and present controversy as to the parties' rights under the License Agreement.

71. C. V. Starr is entitled to a declaration under 28 U.S.C. § 2201 that the License Agreement is no longer in effect, and whatever rights defendants may have had under that Agreement to use any STARR marks have terminated.

WHEREFORE, plaintiffs demand judgment:

A. Preliminarily and permanently enjoining defendants, and their officers, agents, servants, employees and all persons acting in concert or participation with them from using the mark STARR, alone or in combination, for and/or in connection with insurance products and services, or using any names or marks confusingly similar thereto, and from making false designations of origin or unfairly competing with plaintiffs;

B. Ordering the cancellation of all of defendants' federal registrations and withdrawal of defendants' applications for marks containing the term "Starr", alone or in combination with other terms and/or designs, for and/or in connection

with insurance products and services;

C. Ordering a transfer to plaintiffs of the "starr" Domain Names, including without limitation, cvstarr.com, and all other Internet domain names that use or otherwise incorporate the term "Starr";

D. Declaring that that the License Agreement was repudiated by defendants and is no longer in effect, and that whatever rights defendants may have had under that Agreement to use the STARR Marks have terminated; and

E. Awarding to plaintiffs such other and further relief as the Court shall deem just and proper.

Dated:   June 9, 2006
         New York, New York

                    Kenneth A. Plevan (KP 2551)
                    John L. Gardiner (JG 8715)
                    Stephanie J. Kamerow (SK 6921)
                    Anthony Dreyer (AD 3571)
                    SKADDEN, ARPS, SLATE,
                      MEAGHER & FLOM LLP
                    Four Times Square
                    New York, New York 10036-6522
                    (212) 735-3000

                    Nicholas A. Gravante, Jr. (NG-4411)
                    Steven I. Froot (SF-7662)
                    Amy Foote (AF-0986)
                    BOIES SCHILLER & FLEXNER LLP
                    570 Lexington Avenue
                    New York, NY  10022

                    Attorneys for Plaintiffs

                    By: _____

## CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury, that on June 9, 2006, I caused a true copy of the foregoing:

- ***Second Amended and Supplemental Complaint***

to be served by hand delivery upon:

Robert L. Raskopf, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
35 Madison Avenue, 17th Floor
New York, New York 10017

Dated: June 8, 2006

Steven R. Katzenstein (SK-7599)