UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
C.V. Starr & Co., Inc., C.V. Starr & Co., :
and Starr Technical Risks Agency, :
   :
     **Plaintiffs,** :
   :
     -against- :    06 Civ. 2157 (HB)
   :
American International Group, Inc., and :
Starr Excess Liability :
Insurance Co., Ltd., :
   :    **OPINION & ORDER**
     **Defendants,** :
------------------------------------------------------ :
American International Group, Inc., :
   :
     **Counterclaim-Plaintiff,** :
   :
     -against- :
   :
C.V Starr & Co., Inc., Starr Technical :
Risks Agency Inc., Starr Associates, Inc. :
C.V. Starr & Co., and Starr Aviation :
Agency, Inc. :
   :
     **Counterclaim-Defendants.** :
------------------------------------------------------X

**Hon. Harold Baer, Jr., District Judge:**

     Plaintiffs C.V. Starr & Co., Inc., C.V. Starr & Co., and Starr Technical Risks Agency (collectively, "CV Starr") brought this action for trademark infringement against defendants American International Group, Inc. and Starr Excess Liability Insurance Co., Ltd. (collectively, "AIG").  AIG has counterclaimed for, *inter alia*, trademark infringement and unfair competition.[1]  On May 9, 2006, I granted in part CV Starr's motion for a preliminary injunction.  See C.V. Starr & Co., Inc. v. American Int'l Group, Inc., No. 06 Civ. 2157, 2006 WL 1230266 (S.D.N.Y. May 9, 2006).  CV Starr now

---

[1] AIG has named Starr Associates, Inc. and Starr Aviation Agency, Inc. as additional counterclaim-defendants.  These parties, along with the other counterclaim-defendants, will be referred to collectively as "CV Starr."

1

moves to dismiss AIG's counterclaims.  For the reasons set forth below, CV Starr's motion is DENIED.

## FACTUAL BACKGROUND

The facts set forth below are taken from AIG's amended counterclaims, dated June 5, 2006.  AIG, an insurance conglomerate "traces its roots" to a small insurance agency opened by Cornelius Vander Starr in 1919 in Shanghai, China.  (Amended Counterclaims ("ACC") ¶1).  The first company to use the "American International brand" was founded by Mr. Starr in 1926.  (ACC ¶ 22).  American International Group, Inc. was formed in 1967.  (ACC ¶ 25).

C.V. Starr & Co., Inc. was founded in 1950 as a holding company for various domestic insurance agencies.  (ACC ¶ 3).  AIG alleges that, despite their "nominal" ownership by C.V. Starr & Co., Inc., these agencies "never conducted any insurance-related operations of their own" but rather "operated as if they were businesses of AIG."  (ACC ¶¶ 3-4).  In 1970, C.V. Starr & Co., Inc. sold many of its assets to AIG in return for AIG stock.  C.V. Starr & Co., Inc. retained ownership of several agencies (the "Starr Agencies"), including those named as counterclaim-defendants herein.  (ACC ¶ 27).  AIG contends that the Starr Agencies "continued to operate under the close supervision and control" of AIG, and were "completely dependent on AIG for basic operational support."  (ACC ¶ 28).

The Starr Agencies served as managing general agents ("MGAs") to AIG "member companies."  (ACC ¶ 59).  According to AIG, an MGA "is an agent authorized by an insurance company to manage all or part of an insurer's business, often in a specific geographic territory and/or for a particular class of insurance.  An MGA may market an insurer's business, underwrite and issue policies, collect premiums [and] adjust and pay claims . . ."  (ACC ¶ 60).  The Starr Agencies provided such services exclusively for AIG affiliated insurers.  (ACC ¶¶ 55-58).  C.V. Starr & Co., Inc. functioned as a holding company, and did not itself provide insurance products or services.  (ACC ¶ 54).  AIG alleges that, for the duration of their relationship, the Starr Agencies were treated in all respects as if they were AIG subsidiaries.  (ACC ¶¶ 63-72).  AIG further contends that CV Starr has "little, if any, brand recognition independent of AIG."  (ACC ¶¶ 76-82).

Beginning in early 2006, AIG terminated its agency agreements with the Starr Agencies. (ACC ¶ 90). These agencies remain under the control of Maurice Greenberg, AIG's former chairman and CEO. (ACC ¶ 6). AIG contends that Greenberg is attempting to use the Starr Agencies to compete against AIG, and to misappropriate AIG's business and other assets. (Id.)

AIG holds federal registrations for several STARR related marks.[2] CV Starr holds a federal registration for "C.V. STARR & CO.,"[3] as well as design marks for "STARR TECHNICAL RISKS AGENCY, INC." and "STARR TECH." (ACC ¶ 33). In 1993, C.V. Starr & Co., Inc. entered into a licensing agreement with Starr Excess Liability Insurance Company, Inc. ("Starr Excess"), an AIG subsidiary, granting Starr Excess the right to use the STARR marks. (ACC ¶ 44). AIG alleges that this agreement was intended to ensure that AIG, as the "beneficial owner" of the STARR marks, would not lose control of those marks if AIG "ceased to have a substantial interest in Starr Excess." (ACC ¶ 51).

Despite the dissolution of their business relationship, AIG and CV Starr both claim ownership of the STARR marks. These competing claims form the basis of this action.

## DISCUSSION

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe all factual allegations in the complaint in favor of the non-moving party. See Krimstock v. Kelly, 306 F.3d 40, 47-48 (2d Cir. 2002). The Court's consideration is normally limited to facts alleged in the complaint, documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken. See Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

---

[2] These marks are: "STARR EXCESS"; "STARR EXCESS LIABILITY INSURANCE COMPANY, LTD."; "STARR EXCESS SERVICES"; "STARR EXCESS LIABILITY INSURANCE INTERNATIONAL, LTD."; "STARR EXCESS INTERNATIONAL"; and "STARR EXCESS INRTNATIONAL" (and design). (ACC ¶ 32).
[3] CV Starr also holds a design mark for "CV STARR & CO."

3

which would entitle him to relief." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

### A. Applicable Standards

AIG brings counterclaims for: trademark infringement;[4] unfair competition;[5] false advertising;[6] common law "passing off"; unjust enrichment; and trademark cancellation.[7]

To plead trademark infringement under the Lanham Act, AIG must show that it is the owner of a valid mark that is entitled to protection and that CV Starr's actions are likely to cause consumer confusion. See Sports Auth., Inc. v. Prime Hospitality Corp., 89 F.3d 955, 960 (2d Cir. 1996); 15 U.S.C. § 1114(1)(a). See also Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc., 220 F. Supp. 2d 289, 297-98 (S.D.N.Y. 2002) (standards for trademark infringement under New York common law substantively identical to Lanham Act). To plead unfair competition based on a false designation of origin under the Lanham Act, AIG must allege that CV Starr's use of a word or symbol "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection . . . association . . . origin, sponsorship, or approval" of CV Starr's services. 15 U.S.C. § 1125(a)(1)(A). See also Commercial Data Servers, Inc. v. Int'l Business Machines Corp., 166 F. Supp. 2d 891, 894 (S.D.N.Y. 2001) (Under New York common law, "[t]he essence of an unfair competition claim is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.") (internal quotations omitted).[8]

AIG also brings claims for false advertising. "A claim under the Lanham Act for false advertising requires allegations that: (1) the advertisement is literally false[;] or (2) although the advertisement is literally true, it is likely to deceive or confuse consumers."

---

[4] AIG brings claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1), as well as common law trademark infringement.

[5] AIG brings claims for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), as well as common law unfair competition.

[6] AIG brings claims for false advertising under the Lanham Act, 15 U.S.C. § 1125(a) as well as under the New York General Business Law sections 349-350.

[7] AIG seeks to cancel CV Starr's marks pursuant to 15 U.S.C. § 1064.

[8] In addition, a claim for "passing off" (also known as "palming off") under New York law is governed by the same standards as a claim for unfair competition under the Lanham Act. Marvullo v. Bruner & Jahr A.G. & Co., No. 98 Civ. 5000, 2001 WL 40772, * 7 (S.D.N.Y. Jan. 17, 2001).

Societe Des Hotels Meridien v. LaSalle Hotel Operating Partnership, L.P., 380 F.3d 126, 132 (2d Cir. 2004) (internal quotation omitted).  See also 15 U.S.C. § 1125(a).  To successfully plead false advertising under New York law, AIG must allege that CV Starr engaged "'in an act or practice that is deceptive or misleading'" and that it has been injured as a result.  Goshen v. Mutual Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 (2002) (quoting N.Y. Gen. Bus. Law § 349).[9]

"Under the Lanham Act, registrations less than five years old may be cancelled for any reason which would have been sufficient to deny registration in the first instance."  Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd., 977 F. Supp. 264, 267 (S.D.N.Y. 1997) (internal quotation omitted).  A mark that has achieved "incontestable" status (i.e., a mark that has been registered for more than five years) may be cancelled or assigned to the proper owner if, *inter alia*, the mark is being used to misrepresent the source of goods or services; the mark suggests a false connection with an institution; or the mark has been abandoned.  See 15 U.S.C. §§ 1052(a), 1064(3).[10]

Finally, "[t]o succeed on a claim for unjust enrichment, plaintiff must show that the defendants received a benefit at plaintiff's expense, and that equity requires restitution."  Jet Star Enterprises, Ltd. v. Soros, No. 05 Civ. 6585, 2006 WL 2270375, *5 (S.D.N.Y. Aug. 9., 2006) (Baer, J.).  "In addition, plaintiff must have had direct dealings or some sort of quasi-contractual relationship with [the] defendant."  Id.

### B.  Application

CV Starr argues that each of AIG's counterclaims fails as a matter of law because AIG cannot show that it is the "rightful owner" of any of the marks for which CV Starr holds valid federal registrations.  Conversely, AIG contends that, because it controlled the nature and quality of the services provided under the marks, it owns the STARR marks.  See Liebowitz v.Elsevier Science Ltd., 927 F. Supp. 688, 696 (S.D.N.Y. 1996).

"Whether the relationship is that of licensor/licensee or parent/subsidiary, the one entity which *controls* the nature and quality of the goods sold under the mark is the

---

[9] The standards for deceptive business practices under section 349 of the General Business Law are substantively identical to those for false advertising under section 350.  Goshen, 98 N.Y.2d at 324 n.1.
[10] CV Starr's "STARR TECHNICAL RISKS AGENCY, INC." and "STARR TECH" marks have been registered for more than five years.  (Plevan Aff., Exs. 4-5).

owner." In re Wella A.G., 787 F.2d 1549, 1554 (Fed. Cir. 1986) (Nies, J. concurring) (citing J. McCarthy Trademarks and Unfair Competition, § 18.14 at 130 (2d ed. 1984) (emphasis in original). See also Bell v. Streetwise Records, Ltd., 640 F. Supp. 575, 580 (D. Mass. 1986) ("where prior ownership. . . cannot be established" court must determine "which party controls or determines the nature and quality of the goods which have been marketed under the mark. . .") (citing In re Polar Music Int'l A.B., 714 F.2d 1567 (Fed. Cir. 1983)); Liebowitz, 927 F. Supp. at 696 ("answer to the question of ownership of the marks . . . will be found by determining who controls the quality of the goods").

In Bell the court addressed competing claims by a singing group and its former record label to the name "New Edition." The court stated that, in order to determine which party owned the mark, it was necessary to "first identify that quality or characteristic for which the group is known by the public." Bell, 640 F. Supp. at 581.[11] Then, the court could decide "who controls that quality or characteristic." Id. In CNA Financial Corp. v. Brown, 922 F. Supp. 567 (M.D. Fla. 1996), this concept was applied to insurance services. There, the court found that an insurance holding company had forfeited its rights in several service marks by ceding control of those marks to its subsidiaries. The court stated that because plaintiff "does not control the nature and quality of its licensee's insurance services . . . [it] lacks the requisite control over the services connected with its marks and, therefore forfeits its rights in the mark[s]." Id. at 574.[12]

Here, AIG has alleged that, although the Starr Agencies were owned and operated independently on paper, they in fact functioned (for the duration of their corporate existence) as mere business units of AIG. AIG has alleged that CV Starr exercised no control over the quality of the insurance services provided by the Starr Agencies, and that

---

[11] In Bell, the court also determined that plaintiffs had appropriated the mark first. Here, the concept of prior use is inextricably intertwined with the "quality control" doctrine. AIG alleges that CV Starr's use of the STARR marks, from their inception, was subject to AIG's complete control. Thus, if in fact AIG controlled the quality of all services rendered under the marks, it cannot be said that CV Starr's "prior use" of the marks trumps AIG's claim.

[12] CV Starr argues that, by virtue of the licensing agreement entered into by C.V. Starr & Co., Inc. and Starr Excess (an AIG company), AIG is estopped from contesting CV Starr's ownership of the STARR marks. However, AIG alleges that this licensing agreement was a sham, in that it contained no quality control provisions, provided for no consideration to CV Starr, did not grant CV Starr the power to terminate the license, and was executed on behalf of CV Starr by an AIG officer. (ACC ¶¶ 45-52). Thus, the existence of the licensing agreement does not demonstrate, as a matter of law, that AIG acquiesced to CV Starr's ownership of the marks.

6

existence) as mere business units of AIG. AIG has alleged that CV Starr exercised no control over the quality of the insurance services provided by the Starr Agencies, and that CV Starr's brand recognition was wholly derived from its public association with AIG. If true, these allegations could entitle AIG to ownership of the STARR marks.

CV Starr contends that, if AIG were to prevail, any better known co-venturer could, upon the dissolution of a business relationship, appropriate the registered trademarks of a former affiliate. However, CV Starr has produced no authority to support the proposition that the "quality control" doctrine does not extend to the case at bar. In addition, without discovery, I cannot be certain exactly which products and services CV Starr provided and to what extent AIG controlled those services. If it turns out that AIG did in fact exert the measure of control it alleges over the operations of the Starr Agencies, so that it controlled the quality of those services for which CV Starr was known, AIG may own the STARR marks. Therefore, CV Starr's motion to dismiss AIG's counterclaims must be denied.[13]

## CONCLUSION

For the reasons set forth above, CV Starr's motion to dismiss AIG's counterclaims is DENIED. The Clerk of the Court is directed to close this motion and to remove it from my docket.

**SO ORDERED.**

September 14, 2006
New York, New York

U.S.D.J.

---

[13] In its moving papers, CV Starr moved to strike AIG's demand for an accounting of profits, enhanced damages and attorneys' fees. However, in its reply papers, CV Starr agreed to "defer that issue" until after the conclusion of discovery. (CV Starr's Reply Mem. at 15 n.8). Thus, that portion of CV Starr's motion seeking to strike AIG's demand for enhanced damages is also denied.